NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 CA 0678

KARL ANDERSON AND COURTNEY ANDERSON

VERSUS

SCHUMACHER HOMES OF LOUISIANA, INC.

*Judgment Rendered:*   DEC 3 0 2024

* * * * * * * *

Appealed from the
21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Case No. 179956, Division C

The Honorable Erika W. Sledge, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Shawn A. Carter<br>Lafayette, Louisiana | Counsel for Defendant/Appellant<br>Schumacher Homes of Louisiana,<br>Inc. |
| David Dominique<br>Denham Springs, Louisiana | Counsel for Plaintiffs/Appellees<br>Karl Anderson and Courtney<br>Anderson |

* * * * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Chutz, J Concurs
in part

Hester, J. Concurs

**THERIOT, J.**

Schumacher Homes of Louisiana, Inc. appeals the 21st Judicial District Court's January 30, 2024 judgment granting Karl and Courtney Anderson's motion to vacate an arbitration award. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 2021, Karl and Courtney Anderson ("the Andersons") contracted with Schumacher Homes of Louisiana, Inc. ("Schumacher") for the construction of their home.[1] The construction contract included an arbitration clause. Schumacher completed the Andersons' home and delivered occupancy in 2022. After delivery of the home, the Andersons initiated arbitration proceedings with the American Arbitration Association ("AAA"), alleging certain defects in the construction of the home. The Andersons were not represented by counsel during the arbitration proceedings. This appeal relates to the selection of the arbitrator.

During the arbitrator selection process, the AAA provided a panel of ten arbitrators, including Gary Giepert, to allow the parties to strike certain arbitrators and rank the remaining arbitrators in order of their preference. On August 17, 2022, Schumacher submitted its ranked list wherein it struck four out of the ten panelists and ranked Giepert first out of the remaining six panelists. On August 24, 2022, the Andersons submitted their ranked list wherein they struck out six of ten panelists provided by the AAA and ranked Giepert third out of the remaining four panelists. The AAA selected Giepert as arbitrator.

On August 29, 2022, Giepert executed a general arbitrator oath form wherein he asserted that none of the parties had appeared before him previously. On September 6, 2022, the AAA issued a letter to the parties informing them of the selection of Giepert. The letter also requested for the parties or their counsel to communicate any potential conflicts to the AAA.

_____

[1] The home's purchase price was $407,282.12.

2

In November 2022, while the arbitration was pending, the Andersons alleged that Giepert engaged in ex-parte communication with Schumacher's counsel, which is prohibited by the AAA's Construction Industry Arbitration Rules and Mediation Procedures ("AAA Construction Rules"). The Andersons were aggrieved by the communication and filed a motion to award the entire claim, which was treated as a motion to remove the arbitrator. A status conference was held on November 30, 2022, which assuaged the Andersons' fairness and impartiality concerns. Neither Giepert nor Schumacher revealed any prior arbitrations at the status conference.

Arbitration proceedings began at the Andersons' home on May 31, 2023, and continued at Schumacher's Holden, Louisiana office on June 1, 2023 and June 2, 2023. On June 30, 2023, the arbitrator's award was rendered, filed, and delivered to the parties.[2] Following the rendition of the arbitrator's award, the Andersons discovered that Giepert was the arbitrator in two prior arbitrations in which Schumacher was a party, which were filed in 2015 and closed in 2015 and 2016 respectively.

On September 27, 2023, the Andersons filed a motion to vacate the arbitration award wherein they argued that the award had been obtained through corruption, fraud, or undue means and evidenced partiality on the part of the arbitrator. On October 30, 2023, Schumacher filed a motion to confirm the arbitration award. On November 27, 2023, Schumacher filed exceptions and an opposition to the Andersons' motion to vacate. Both motions were heard on

---

[2] Giepert, as the arbitrator, awarded the following monetary damages to the Andersons: (1) $5,000.00 for issues relating to interior non-structural framing; (2) $20,300.00 to replace the home's defective roof; (3) $900.00 to upgrade padding beneath the carpet; and (4) $3,082.50 for inspection costs. Giepert also gave Schumacher the option to either repair the following or pay monetary damages for same: (1) caulking around the house, texture in the downstairs hall bathroom, and small area on the ceiling in the garage ($350.00); (2) water shutoff placed where it would not get covered by mud ($300.00); and support below exterior door threshold and safety hinges ($250.00). Lastly, Giepert awarded to the Andersons a limited lifetime warranty on their windows, which was to be provided by Schumacher.

December 4, 2023. The trial court ruled on some matters in open court and took the remaining matters under advisement. On December 18, 2023, the trial court signed written reasons wherein it found that Giepert's failure to disclose his prior arbitrations involving Schumacher constituted a valid basis for vacating the arbitration award. The trial court pointed to Giepert's sworn oath that no party had appeared before him in the past and the Andersons' subsequent discovery that Schumacher had in fact appeared before Giepert on at least two occasions. The trial court found the circumstances presented a situation where there was evident partiality on the part of the arbitrator.[3]

A written judgment vacating the arbitration award was signed on January 30, 2024. Schumacher filed a motion for new trial, which was heard and denied in open court on March 18, 2024. The trial court signed a written judgment denying Schumacher's motion for new trial on April 3, 2024. This appeal by Schumacher followed.

## ASSIGNMENTS OF ERROR

Schumacher assigns the following as error:

(1) The trial court erred in shifting the burden of proof to Schumacher based on the Andersons' asserted "impression of possible bias" and/or "appearance of bias" resulting from the arbitrator's non-disclosure of prior arbitrations with Schumacher;

(2) The trial court erred in vacating the award without requiring proof that (i) the arbitration award was procured by corruption, fraud, or undue means or (ii) there was evident partiality or corruption on the part of the arbitrator;

(3) The trial court erred by applying a *per se* vacatur rule for nondisclosure of prior arbitrations and not requiring proof (i) that the arbitrator's non-disclosure was intentional or (ii) that a conflict checks was not performed.

---

[3] The trial court also considered the Andersons' arguments involving ex-parte communication between Giepert and Schumacher, noting that the Andersons were aware of the ex-parte communication as of November 2022 and filed a motion to award the entire claim based upon the incident, which they subsequently retracted. The trial court found that the Andersons waived their arguments to vacate the arbitration award based upon the ex-parte communication as a result.

(4) The trial court erred by not imposing upon the Andersons a reasonable duty to investigate Giepert's arbitration history;

(5) The trial court erred by vacating the award based on facts that were known or were discoverable by due diligence before or during the arbitration;

(6) The trial court erred in granting a motion to vacate that was not served by the sheriff's office within three (3) months after the award was filed and delivered.

## STANDARD OF REVIEW

Arbitration is a mode of resolving differences through the investigation and determination by one or more individuals appointed for that purpose. The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action. *Crescent Prop. Partners, LLC v. Am. Mfrs. Mut. Ins. Co.*, 2014-0969 (La. 1/28/15), 158 So.3d 798, 803. As a matter of public policy, Louisiana strongly favors arbitration; thus, arbitration awards are presumed valid. *DeArmond v. E. Jacob Constr., Inc.*, 2021-0981 (La. App. 1 Cir. 4/8/22), 342 So.3d 77, 80.

Under the Louisiana Binding Arbitration Law, La. R.S. 9:4201 *et seq.*, a party to an arbitration proceeding may, within one year after the award is made, apply to the trial court for confirmation of the award, and the court shall confirm the award unless the award is vacated, modified, or corrected, as set forth in La. R.S. 9:4210 and 4211. See La. R.S. 9:4209. A court may vacate, modify, or correct an arbitration award based only on the exclusive grounds specified in La. R.S. 9:4210 and 4211, which do not include errors of law or fact. *DeArmond*, 342 So.3d at 80. Of relevance here, under La. R.S. 9:4210(B), the trial court shall vacate an arbitration award where the arbitrator was evidently partial or corrupt.[4] *DeArmond*, 342 So.3d at 80. A court, however, is not entitled to substitute its

---

[4] While other circuit courts have adopted a "manifest disregard for the law" as an additional basis for vacating an arbitration award, this court has adhered to the statutory standard established by La. R.S. 9:4210. *DeArmond*, 342 So.3d at 80 n.2 (citing *Bergeron v. Patel*, 2016-0600 (La. App. 1 Cir. 5/17/17), 2017 WL 2170142, *4 n.3, and cases cited therein).

5

judgment for that of the arbitrator chosen by the parties. Rather, a court's determination is limited to whether the party challenging the award has proven one or more of the specific statutory grounds for invalidation. An appellate court conducts a *de novo* review of a trial court judgment confirming or vacating an arbitration award. *DeArmond*, 342 So.3d at 80.

## DISCUSSION

### Assignments of Error 1 through 5

Schumacher argues that the trial court erred in (1) shifting the burden to proof to Schumacher based on the Andersons' asserted "impression of possible bias" and/or "appearance of bias" resulting from the arbitrator's non-disclosure of prior arbitrations with Schumacher; (2) vacating the award without requiring proof that the arbitration award was procured by corruption, fraud, or undue means, or proof of evident partiality or corruption on the part of the arbitrator; and (3) not requiring proof that the arbitrator's nondisclosure was intentional or that a conflicts check was not performed.

An arbitration award may be vacated under La. R.S. 9:4210, which states in relevant part:

> In any of the following cases the court in and for the parish wherein the award was made shall issue an order vacating the award upon the application of any party to the arbitration.
>
> . . .
>
> B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.

To constitute evident partiality, it must clearly appear that the arbitrator was biased, prejudiced, or personally interested in the dispute. Proof of evident partiality requires more than an appearance of bias. A challenging party must

show that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration.[5] *DeArmond*, 342 So.3d at 81.

The parties' construction contract included an arbitration clause whereby the parties agreed to "final and binding arbitration by an arbitrator appointed by the [AAA] in accordance with the [AAA Construction Rules]." The Andersons introduced the AAA Construction Rules at trial.

Rule 19 of the AAA Construction Rules, which provides the rules for disclosure, states in relevant part:

> (a) **Any person appointed or to be appointed as an arbitrator as well as the parties and their representatives shall disclose to the AAA, as promptly as practicable, any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives.** Such obligation shall remain in effect throughout the arbitration. Failure on the part of a party or a representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-42. (Emphasis added.)

Rule 20 of the AAA Construction Rules relates to the disqualification of an arbitrator and provides in pertinent part:

> (a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and may be subject to disqualification for:
>
> i. partiality or lack of independence,
> ii. inability or refusal to perform his or her duties with diligence and in good faith, and
> iii. any grounds for disqualification provided by applicable law.

Giepert was also required to fill out a general arbitrator oath form provided by the AAA. The oath includes the following information regarding the obligation to disclose:

---

[5] It is also a general rule that a party must object to an arbitrator's partiality at the arbitration hearing, when he knows the reasons supporting the objection, before such an objection will be considered. *In re Arbitration Between U.S. Turnkey Expl., Inc. and PSI, Inc.*, 577 So.2d 1131, 1135 (La. App. 1 Cir. 1991). However, the Andersons did not learn that Giepert had previously acted as arbitrator in proceedings involving Schumacher until after the arbitration award was rendered.

**Disclosure Obligations**

**It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind.** This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided, it must also be disclosed. **Any doubts should be resolved in favor of disclosure.** If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. All disclosures will be brought to the attention of the parties. (Emphasis added.)

The oath form also states in pertinent part:

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the [AAA], Code of Ethics for Arbitrators in Commercial Disputes, the parties' agreement, and applicable law pertaining to disclosures.

The oath form further asks the arbitrator a series of questions to determine whether any potential conflicts exist. Most relevant is question 9, which asks whether "any of the party representatives, law firms or parties appeared before you in past arbitration cases[.]" Giepert's answer was "NO."

Schumacher's first three assignments of error relate to the burden of proof and the purported absence of evidence demonstrating that Giepert intentionally failed to disclose his prior arbitrations for Schumacher or failed to perform a conflicts check. However, the Andersons' burden of proof required them to demonstrate that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration. See *DeArmond*, 342 So.3d at 81; *Bergeron v. Patel*, 2016-0600 (La. App. 1 Cir. 5/17/17), 2017 WL 2170142 at *5 (unpublished opinion). Considering the evidence presented at trial, we find that the Andersons successfully met this "reasonable person" standard. Rule 19 of the AAA Construction Rules requires that any person appointed or to be appointed as

8

an arbitrator, as well as the parties themselves, promptly disclose any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality. Thus, not only did Giepert have a duty to disclose, but Schumacher, the Andersons, and their principals and attorneys, had a similar duty of disclosure. See *Bergeron*, 2017 WL 2170142 at *7. Despite this continuing obligation, neither Giepert nor Schumacher disclosed that Giepert had previously acted as arbitrator in two of Schumacher's prior arbitrations, including two of the three arbitrations involving Schumacher that preceded the Anderson arbitration, until after the Andersons filed their motion to vacate. Instead, Giepert swore that none of the parties had appeared before him previously.

Although Schumacher argues that Giepert's nondisclosure of the prior proceedings with Schumacher may have been due to oversight, an error in Giepert's conflicts check software, the routine destruction of old files, or Giepert simply forgetting, the fact remains that the disclosure was not made. Even if inadvertent, Giepert's failure to disclose the prior arbitrations for Schumacher to the Andersons took away the Andersons' right to make a knowing and timely objection. See *Citywide Testing and Inspection Inc. v. Shaw Env't Inc.*, 2012-0018 (La. App. 4 Cir. 5/23/12), 2012 WL 4044900 at *3 (unpublished opinion), writ denied, 2012-1427 (La. 10/8/12), 98 So.3d 858 (affirming a trial court's grant of a motion to vacate arbitration due to the AAA's failure to timely disclose that the arbitrator's wife was employed by a client of the opposing party). The arbitration proceedings were tainted with an appearance of impropriety. See *Citywide Testing and Inspection Inc.*, 2012 WL 4044900 at *3. Considering the AAA's emphasis on the importance of disclosures and the facts presented, we find that a reasonable person would have concluded that Giepert was partial to Schumacher. Accordingly, assignments of error one, two, and three lack merit.

9

Schumacher further argues that the trial court erred by not imposing upon the Andersons a reasonable duty to investigate Giepert's arbitration history and vacating the award based on facts that were known or were discoverable by due diligence before or during the arbitration. However, the Andersons clearly depended upon Giepert's sworn statement that none of the parties had previously appeared before him. This reliance was not unreasonable. We do not agree that due diligence or the reasonable duty to investigate requires the Andersons to assume that the information provided by the arbitrator (in this case, the failure to disclose) is false. Assignments of error four and five lack merit.

Assignment of Error 6

Schumacher further argues that the trial court erred in granting a motion to vacate the arbitration award when that motion was not served by the sheriff's office within three months of the arbitrator's award being filed and delivered.

Louisiana Revised Statutes 9:4213 provides in pertinent part:

Notice of a motion to vacate, modify, or correct an [arbitration] award shall be served upon the adverse party or his attorney within three months after the award is filed or delivered, **as prescribed by law for service of a motion in an action.** (Emphasis added.)

Further, La. Code Civ. P. article 1313 states in relevant part:

A. Except as otherwise provided by law, **every pleading subsequent to the original petition, and every pleading which under an express provision of law may be served as provided in this Article,** may be served either by the sheriff or by:

(1) Mailing a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party at his last known address, this service being complete upon mailing.

. . .

**(4) Transmitting a copy by electronic means to counsel of record,** or if there is no counsel of record, to the adverse party, at the number or addresses expressly designated in a pleading or other writing for receipt of electronic service. Service by electronic means is complete upon transmission but is not effective and shall not be certified if the serving party learns the transmission did not reach the party to be served. (Emphasis added.)

The arbitration award in the instant case was issued on June 30, 2023. The Andersons filed their motion to vacate the arbitration award on September 27, 2023. Per the certificate of service and attached documents introduced as an exhibit at trial, the Andersons served the motion to vacate the arbitration award upon Schumacher via certified mail and e-mail on September 27, 2023. In other words, the Andersons filed their motion to vacate and served Schumacher via certified mail and e-mail within three months of the award being filed.

The Andersons served Schumacher via certified mail and e-mail within the three months allotted for doing so, but did not effectuate sheriff's service within that time period. Schumacher argues the trial court should have dismissed the Andersons' motion to vacate as untimely as a result. Louisiana Revised Statutes 9:4213 provides that notice of a motion to vacate an arbitration award "shall be served . . . as prescribed by law for service of a motion in an action," expressly permitting the motion to be served in accordance with La. Code Civ. P. art. 1313(A) either by the sheriff or by transmitting a copy via mail or electronic means to counsel of record. Further, La. R.S. 9:4205 provides that any application to the court under the Louisiana Binding Arbitration law shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided. The service effectuated by the Andersons is proper.

**DECREE**

For the above and foregoing reasons, the 21st Judicial District Court's January 30, 2024 judgment granting Karl and Courtney Anderson's motion to vacate an arbitration award is affirmed. Costs of the appeal are assessed to Appellant, Schumacher Homes of Louisiana, Inc.

**AFFIRMED.**