# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## NO. 08-1298


**MICHAEL L. YOUNG, ET UX**

**VERSUS**

**PEASLEE CAPITAL GROUP, LLC AND
STEVEN M. PEASLEE**


************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 220,664
HONORABLE GEORGE C. METOYER, DISTRICT JUDGE

************

**JIMMIE C. PETERS
JUDGE**

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Marc T. Amy, Judges.


**AFFIRMED.**


**Louis Wellan
Attorney at Law
Post Office Box 12323
Alexandria, LA 71301
(318) 443-9917
COUNSEL FOR PLAINTIFFS/APPELLEES**
    Michael L. Young, et ux

**W. Alan Pesnell
The Pesnell Law Firm
Post Office Box 1794
Shreveport, LA 71166-1794
(318) 226-5577
COUNSEL FOR DEFENDANTS/APPELLANTS:**
    Peaslee Capital Group, LLC and Steven M. Peaslee

PETERS, J.

The defendants, Peaslee Capital Group, LLC and Steven M. Peaslee, appeal the trial court judgment confirming an arbitration award in favor of the husband and wife plaintiffs, Michael L. Young and Donna H. Young.[1]  For the following reasons, we affirm the trial court judgment.

## DISCUSSION OF THE RECORD

The arbitration award stems from a suit filed by the Youngs against the defendants on April 27, 2005, seeking damages for breach of contract.  The petition asserted that, in December of 2001, Mr. Young paid Steven M. Peaslee $10,000.00 for an option to purchase a ten percent interest in Peaslee Capital Group, LLC (Peaslee, LLC), and that approximately one year later Mr. Young exercised the option by paying Mr. Peaslee an additional $140,000.00 for the stated interest.  Subsequent to the purchase, according to the petition, Mr. Young discovered that Mr. Peaslee had misrepresented the value of Peaslee, LLC; had misrepresented the source and nature of its profits and losses; had failed to disclose his personal gambling habits; and had breached his fiduciary duty to Mr. Young as set forth in the organization's Operating Agreement and as required under the "Louisiana Limited Liability Company Act." The Youngs sought recovery of their purchase price; general damages for emotional distress and humiliation, as well as loss of business reputation; attorney fees; and costs of court.

The defendants responded with a dilatory exception of prematurity, asserting that the Operating Agreement governing the ownership of Peaslee, LLC required that all disputes be submitted to binding arbitration.  Without further argument, the trial court matter was dismissed and the issues were submitted to arbitration.

---

[1]Mrs. Young's interest in the litigation arises by virtue of her position as owner of community property used for the transactions at issue.

This matter returned to the trial court on May 15, 2008, when the Youngs filed a motion to have the arbitrator's decision confirmed, attaching as an exhibit to the motion the arbitrator's written award. The arbitrator awarded the Youngs the sum of $75,978.00, together with judicial interest from date of demand in arbitration until paid in full and twenty-five percent of the principal and interest as attorney fees. The award further assessed costs of the arbitration process between the two parties.[2]

The defendants responded to the Youngs' trial court motion by filing a cross-motion to have the award vacated. In their cross-motion, the defendants asserted that the arbitrator was arbitrary and capricious (1) in awarding the Youngs attorney fees and (2) in requiring a lump sum payment rather than payment in installments as provided by the Operating Agreement.

At the hearing on the motion and cross-motion, the defendants offered into evidence the record of the original proceedings in the trial court, as well as various exhibits filed in the arbitration proceedings.[3] Counsel for the Youngs did not object to the introduction of the records as exhibits, but pointed out that the exhibits were incomplete in that they did not contain the complete record. Specifically, the records submitted did not contain deposition testimony used at the arbitration hearings or testimony taken at the hearings.

In arguing the matter to the trial court, counsel for the defendants suggested that despite all the allegations of the Youngs' original petition, all claims were

---

[2]The arbitration award set the administrative fees due the American Arbitration Association at $2,250.00 and the compensation and expenses of the arbitrator at $10,088.55. Despite some comments concerning the expensive nature of arbitration and the extensive delays associated with the process, cost assessment is not at issue in this litigation.

[3]The exhibits from the arbitration proceedings are extensive, are not indexed, and contain numerous administrative documents not related to the issues before us. That being the case, they are extremely difficult to assimilate and use in this review.

2

dismissed before the arbitration except the claims for reimbursement of the initial investment and the 401K contribution issue. According to counsel for the defendant, the arbitrator rejected the claim for 401K contributions and awarded the exact amount that had been offered to the Youngs by Mr. Peaslee within thirty days after Mr. Young had terminated the business relationship. That being the case, the defendants argued to the trial court, they were the "prevailing parties" in the arbitration and, pursuant to the terms of the Operating Agreement, should have been the party to be awarded attorney fees.

In response to this argument, counsel for the Youngs again pointed out that, not only was there no record of the arbitration proceedings, but that the parties had agreed that written reasons for the arbitration award were not necessary. That being the case, counsel argued, both sides of the arbitration process were not before the trial court and the trial court could only speculate "as to what the arbitrator was thinking or not thinking." Besides, counsel argued, it was the defendants who insisted on arbitration, not the Youngs.

Following the argument of counsel, the trial court granted the Youngs' motion to confirm the arbitration award in full. The trial court rendered judgment without issuing oral or written reasons for its judgment. The defendants perfected this appeal, arguing that the trial court erred as a matter of law by denying its motion to vacate and in confirming the arbitration award.

**OPINION**

The law pertaining to arbitration matters was discussed exhaustively in *Webb v. Massiha*, 08-226, pp. 4-5 (La.App. 5 Cir. 9/30/08), 993 So.2d 345, 347-48, *writs*

3

*denied*, 08-2834, 08-2845 (La. 2/6/09), 999 So.2d 780, 781 (citations and footnotes omitted):

> Arbitration proceedings are governed by La.R.S. 9:4201 et seq., and the statutory grounds for vacating or modifying an arbitration award in whole or in part are provided in La.R.S. 9:4210 and 4211. In addition, a litigant may attack the arbitration award on the basis of "a manifest disregard of the law," a judicially created ground for vacating an arbitration award recognized by several courts of appeal. Arbitration is favored in Louisiana. Furthermore, an arbitration award is *res judicata.* Unless grounds for vacating, modifying or correcting the award are established, the award must be confirmed, and the burden of proof is on the party attacking the award. Absent the existence of any of the statutory or jurisprudential grounds for vacating or modifying an arbitration award, a reviewing court is prohibited from reviewing the merits of the arbitration judge's decision. Further, a reviewing court may not substitute its own conclusions for that of the arbitration judge.

Furthermore, as a general rule, there is a presumption that the arbitrator's award is correct in the absence of a record. *Oliver v. Cal Dive Int'l, Inc.*, 02-1122 (La.App. 1 Cir. 4/2/03), 844 So.2d 942, *writs denied*, 03-1230, 03-1796 (La. 9/19/03), 853 So.2d 638, 648. We only have a partial record before us as no transcript of the testimony presented in the arbitration proceedings exists and no narrative of the facts presented by testimony has been submitted.[4]

The documents offered before the trial court are certified to by the Central Case Management Center Assistant Vice President of the American Arbitration Association (AAA) as "true and exact copies of the [Young/Peaslee] administrative file, with the exception of internal AAA financial and administrative forms, telephone log, and privileged communication between the AAA and its arbitrator(s)." In agreeing to arbitration, the parties agree to be bound by the AAA's Commercial Arbitration Rules and Mediation Procedures (Arbitration Rules), a copy of which is

---

[4]While we recognize that this is an arbitration record controlled by the procedural rules applicable to arbitration proceedings, we also note that no effort was made by the defendants to obtain a narrative of the facts as allowed by La.Code Civ.P. art. 2131.

in the documents presented to the trial court. Of significance in this litigation, Rule R-43, entitled "Scope of Award," of the Arbitration Rules provides in pertinent part:

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

. . . .

(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-49, R-50, and R-51.[5] The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

(d) The award of the arbitrator(s) may include:

(i) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

(ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

The defendants do not rely on the statutory grounds for vacating the award, but they complain that the award should be vacated on the judicially created ground—that the award is a manifest disregard for the law in that it failed to follow the binding provisions of the Operating Agreement,[6] particularly Articles 8.02(e) and 10.02.

Article 8.02(e) provides in pertinent part:

If the Company purchases the Redemption Member's Membership Interest, then not later than ninety (90) days after the date on which the CPA has completed his determination of the Redemption Price . . . the Company shall make a distribution of property . . . however, that at the election of the Company such distribution to the Redemption Member may be made in five (5) equal annual installments, the first of which shall be made on the ninetieth (90th) day after the Appraisal Date[.]

_____

[5]These sections relate to the administrative expenses and arbitrator fees.

[6]The Operating Agreement is one of the documents before us as an exhibit presented to the trial court.

Additionally, Article 10.02 provides:

> Attorneys' Fees. In the event any Member brings an action to enforce any provisions of this Operating Agreement against the Company or any other Member, whether such action is at law, in equity or otherwise, the prevailing party shall be entitled, in addition to any other rights or remedies available to it, to collect from the non-prevailing party or parties the reasonable costs and expenses incurred in the investigation preceding such action and the prosecution of such action, including but not limited to reasonable attorney's fees and court costs.

The defendants do not dispute the principal award to the Youngs, but argue that they should be allowed to take advantage of Article 8.02(e) of the Operating Agreement and pay the award in five equal annual installments rather than a lump sum. They also argue that they, not the Youngs, should be awarded attorney fees. They base this latter argument on the assertion that they, not the Youngs, prevailed in the arbitration—because the arbitrator awarded the Youngs the exact amount they had offered the Youngs when provided with the notice of the Youngs' intent to withdraw from the business, $75,978.00.

In attempting to review the incomplete record before us, we first note that the initial arbitration complaint filed by the defendants admits the purchase agreement, but denies the existence of a 401K plan for Mr. Young. It further denies that Mr. Peaslee ever violated any fiduciary duty owed to Mr. Young and denied the other allegations of the trial court petition. The defendants identified the issues as follows:

- whether the misrepresentations alleged in the state court petition are true;

- whether [Mr. Peaslee] committed a breach of fiduciary duty with regard to the allegations concerning the alleged 401(k) contributions;

- how much Young is entitled to be paid for his membership interest, according to the provisions of the Operating Agreement;

6

- whether Peaslee had any duty to disclose unto Young any of his personal information; and

- if any misrepresentations are proved, or if [Mr. Peaslee] is found to be in breach of his fiduciary duties, the damages associated therewith (there are no damages at issue with regard to the valuation matter, except, perhaps, an interest calculation).

In their response to the initial arbitration complaint, the Youngs generally denied the defendants' assertions and made numerous factual assertions concerning Mr. Peaslee's alleged fiduciary duty breaches, including specifically his failure to comply with the specifics of the Operating Agreement, his use of the business funds for his personal affairs, and his violation of security regulations.

We also note that the defendants list six individuals as potential witnesses[7] in their pre-hearing memorandum submitted to the arbitrator, one of whom is described in the memorandum as an expert, although his expertise is not identified. The trial exhibits also include a December 4, 2007 order of the arbitrator, wherein he identifies two different formulas for the calculation of the amount required to be paid to a retiring partner, one of which had previously been on a web site, but was no longer in existence and which the litigants had not been able to reconstruct. The order then instructed the litigants to, by December 21, 2007, either identify the missing formula or agree to a substitute formula.

Given the record before us and the content of the pleadings made available for review by this court, we can only apply the presumption found in *Oliver*, 844 So.2d 942, that the arbitrator's award is correct. Accordingly, we affirm the trial court judgment in all respects.

---

[7]At an earlier time, the list contained only five potential witnesses, and did not include the expert as a potential witness.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court confirming the arbitration award in favor of Michael L. Young and Donna H. Young. We assess all costs of this appeal to Peaslee Capital Group, LLC and Steven M. Peaslee.

**AFFIRMED.**